UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATEC SRL; MATEC AMERICA, INC.,<br><br>                     PLAINTIFFS,<br><br>   -against-<br><br>GRAMERCY HOLDINGS I, LLC d/b/a<br>NORANDA ALUMINA AND LUCA<br>MARTINELLI<br><br>               DEFENDANTS. | Case No. |

## **COMPLAINT**

Matec SRL and Matec America, Inc. (collectively, "Matec"), through their counsel Bryan Cave Leighton Paisner LLP, by and for their Complaint against Gramercy Holdings I LLC d/b/a Noranda Alumina ("Noranda") and Luca Martinelli, state the following:

1.　　Beginning in 2017, Noranda contracted with Matec for the delivery and installation of five water filtration systems (the "Machines"). Noranda needs the Machines because its business, which is the manufacturing of alumina, requires crushing and washing bauxite, a process that produces a considerable amount of wastewater that, by using the Machines, can be cleaned and recycled for further use at Noranda's plant.

2.　　It now appears that Noranda never had any intention of performing under the Contracts. Instead, Noranda has taken every opportunity to impede Matec's work on the projects. Among other things, Noranda, with Martinelli's assistance, has impeded Matec's access to the Louisiana plant; failed to maintain the Machines that Matec has already delivered and installed and then blamed Matec when the Machines failed to operate as expected; changed plans and understandings with no rhyme or reason; and moved the benchmarks for defining completion of the project that the parties had previously discussed and agreed to.

3.      Indeed, it is clear that Noranda's objective was to induce Matec to deliver and install the Machines while impeding total completion of the work to avoid paying Matec what it is lawfully owed.

4.      Additionally, and beyond Noranda's efforts to prevent Matec from completing its performance under the Contracts, Noranda has not paid Matec the $1,995,736.79 that is currently owed.

5.      As a result of Noranda and Martinelli's dilatory and bad faith actions, Matec has been forced to file this lawsuit.

## PARTIES, JURISDICTION, AND VENUE

6.      Noranda is a Delaware limited liability company with its principal place of business in Louisiana. It is in the business of producing alumina.

7.      Matec S.r.l. is an Italian corporation. It is in the business of manufacturing and installing water purification systems for industrial use.

8.      Matec America, Inc. is a North Carolina corporation with its principal place of business in North Carolina. It is also in the business of manufacturing and installing water purification systems for industrial use.

9.      Matec is informed and believes that Luca Martinelli is an Italian citizen residing in Louisiana. He is employed by Noranda or a Noranda-affiliated entity.

10.     This Court has subject matter jurisdiction over this dispute pursuant to 28 USC § 1332(a) because it is between citizens of different States in which citizens of a foreign state are additional parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.    This Court has personal jurisdiction because the governing Contracts between Noranda and Matec state that all disputes arising therefrom will be resolved in the United States District Court for the Southern District of New York and that the parties specifically consent to personal jurisdiction in New York.

12.    Venue is proper in this Court because the governing Contracts between Noranda and Matec state that all disputes arising therefrom will be resolved in the United States District Court for the Southern District of New York.

## FACTS

### The Relevant Agreements

13.    In a contract dated May 2, 2017, Noranda agreed to purchase, and Matec agreed to deliver and install, two Magnum 2000 x 2000 200 sludge filtration machines at Noranda's Louisiana manufacturing facility.

14.    In 2019, the parties signed two new, but related, contracts.

15.    The first 2019 contract was titled "Agreement on punch list items regarding commercial offer dated May 2-2017," executed by Noranda on July 24, 2019 and by Matec on July 25, 2019. The "Punch List" referenced in the title of the agreement was a list of technical work relating to the original, 2017 contract for the two Magnum 2000 x 2000 200 machines. This contract was subsequently amended on September 24, 2019 to revise delivery dates and penalties. Together with the amendment, this contract is referred to herein as the "2017 Contract."

16.    The second 2019 contract was titled "Agreement for the Manufacture and Installation of Industrial Equipment/Machinery," executed by Noranda on July 24, 2019 and by Matec on July 26, 2019. This contract was for the delivery and installation of two cube filter

presses, and also an additional Magnum 2000 x 2000 200 machine. This contract was subsequently amended on September 24, 2019 to revise payment dates, delivery dates, and penalties. Together with this amendment, the July 2019 contract is referred to herein as the "Installation Contract." Collectively, the 2017 Contract and the Installation Contract are referred to herein as the "Contracts."

17.    In total, Matec agreed to deliver and install five fully operational machines (collectively, the "Machines") at Noranda's Louisiana plant.

**Luca Martinelli**

18.    From February 16, 2018 until July 4, 2019, Luca Martinelli was a director of Matec Steelworks S.r.l., which is Matec's supplier and works with Matec in the production of water purification machines.

19.    Martinelli participated in Matec's negotiations with Noranda about the sale, delivery, and installation of the Machines and he managed, on Matec's behalf, various stages of the installation and assembly of the Machines at Noranda's Louisiana plant.

20.    Due to Martinelli's role in the negotiation of the Contracts, his management of the same, his role as a director at Matec Steelworks, and his employment at Matec Steelworks generally, Martinelli had access to technical information regarding the design, manufacture, and installation of the Machines and their maintenance and operation, the secrecy of which Matec closely guards and which Matec considers to constitute trade secrets.

21.    Martinelli had, and still has, under both American and Italian law, a duty to maintain the confidentiality of all information he learned in connection with his work for Matec.

22.    This confidential, proprietary, and trade secret information includes, but is not limited to

4

a. Information, data, operating schemes, and documentation pertaining to Matec's software;

b. Drawings and other know-how used for machine assembly and installation; and

c. Vendors' preferences, prices, and the contractual conditions Matec applies to them so that Matec can maintain competitive prices in the market.

23.     When he left Matec and Matec Steelworks, Martinelli represented that he was not leaving to work for Noranda or for a Noranda-affiliated company.

24.     Nonetheless, and contrary to his representations, Martinelli started working for Noranda or a Noranda-affiliated company in September 2019.

25.     At that time, Matec is informed and believes, Noranda appointed Martinelli to manage its relationship with Matec and to supervise the remaining installation work on the Machines.

26.     In his new role, and as explained further below, Martinelli has repeatedly interfered with Matec's work by deliberately preventing it from completing installation of the Machines.

27.     Martinelli's prior work at Matec Steelworks, and the knowledge he acquired during the course of that employment, have enabled him to more successfully impede Matec's work at Noranda's Louisiana plant.

**Noranda's Efforts to Impede Completion of the Project**

28.     Despite Matec's good faith efforts to perform pursuant to the Contracts, Noranda has deliberately impeded Matec's efforts at every turn.

5

29.     Noranda has repeatedly sought, in bad faith, to prevent Matec from successfully completing the project. Noranda's dilatory and bad faith conduct has cost Matec time and money, over and above the amounts that Noranda currently owes Matec for the work it has performed under the Contracts.

30.     In seeking to delay completion, and by endlessly moving the goals and objectives for determining when the job has been successfully completed, Noranda is attempting to retain the Machines without paying for them or, at the very least, by only paying for them at a substantially discounted price.

31.     Among other things, to accomplish this goal, Noranda has impeded Matec's access to the Louisiana plant; failed to maintain the machines that Matec has already delivered and installed; changed plans and understandings without warning or justification; and moved the benchmarks that the parties had previously discussed and agreed to for measuring completion of the project.

32.     Matec technicians were frequently on site at Noranda's Louisiana plant during the period when the Contracts were being performed. These technicians regularly observed that Noranda was failing to maintain the Machines and brought these failures to Noranda's attention. In particular, Matec technicians observed a lack of grease, filter changes, and cleaning of the Machines. Each of these actions is necessary for the Machines to properly function.

33.     As of February 2020, Noranda had never changed the hydraulic filters on the Machines, despite the fact that Noranda was running the Machines at an above-average rate. Given its rate of usage, Noranda should have changed the filters at least 4 to 6 times total, on each Machine, as of February 2020.

34.     Matec technicians also observed dirt build up on the Machines due to Noranda's failure to clean, wash, and maintain them. This resulted in the backstop plate being damaged on at least one of the Machines. The operating manuals, which Matec provided to Noranda, state that a Machine should be cleaned every 50 to 70 "cycles." Given its rate of usage, Noranda should have been cleaning and washing the Machines every 2 to 3 days.

35.     Noranda's failure to change the filters on the Machines, and Noranda's failure to clean the Machines, are both contrary to the guidance in the maintenance manuals that Matec provided Noranda at the time the Machines were installed.

36.     Despite Noranda's clear failure to comply with the maintenance requirements it was provided by Matec and its repeated disregard of Matec's instructions and expressions of concern about the maintenance, Noranda has sought to blame Matec for the consequences of its own conduct.

37.     Further specific examples of Noranda's bad faith conduct include, but are not limited to, the following:

a.  On July 9, 2019, without justification, Noranda informed Matec that it would not accept the homogenizers for the cube filter presses that it had previously accepted during the bidding phase of the project.

b.  On August 26, 2019, Noranda sought to make technical revisions to the design of the cube filter presses. When Matec objected that it could not accept requests for technical changes so close to the date of delivery, Noranda claimed that its late changes resulted from the fact that Matec had delivered the design drawings only a few days before. In fact, the drawings had been

delivered to Noranda months earlier, and the delay in raising the issue was wholly attributable to Noranda.

c.  On or around September 14, 2019, Martinelli told Matec technicians, without justification, not to come back to the work site until further notice due to claimed dissatisfaction with Matec's work, thus further delaying the progress of any work underway at that point.

d.  On or around September 19, 2019, Matec reminded Noranda that it still had not received approval for sludge homogenizers to be used in the cube filter presses. Noranda did not approve the plans until September 26, 2019, over two months after the initial request from Matec, again further delaying the progress of Matec's work.

e.  On or around November 4, 2019, without explanation, a Noranda manager, Llaurene Jackson, ordered a Matec technician to dismantle certain items on the Punch List.

f.  On November 18, 2019, Matec communicated to Noranda that it was prepared to finish all the outstanding items on the Punch List, but that it could not do so because Noranda had still not responded with its approval on certain items, which was necessary for Matec to complete others.

g.  On November 20, 2019, contrary to prior representations and agreements, Noranda informed Matec that it would not build the concrete base required to install the cube filter presses, thus making it impossible to install them.

h.  On or around November 29, 2019, Matec technicians discovered that Noranda's technicians had, without authorization and contrary to the

Contracts, modified and substituted parts in the Machines that Matec had already delivered and installed.

i.   On or around December 16, 2019, Matec communicated to Noranda that it could not complete all items on the "Punch List," because it still had not received answers to the questions it had posed to Noranda six weeks earlier.

j.   On or around December 17 and 19, 2019, Matec technicians discovered that Noranda had again been using non-Matec equipment on the Machines, and that Noranda was not properly maintaining the Machines in the manner that Matec had instructed Noranda. Matec communicated this discovery to Noranda and stated that this behavior could not continue if the Machines were to function correctly.

k.   On or around January 28, 2020, Matec technicians discovered that Noranda had again been using non-Matec equipment on the Machines, and that Noranda still was not properly maintaining the Machines. Matec communicated this discovery to Noranda and stated that the Machines would not function correctly if Noranda failed to maintain them.

l.   On or around January 29, 2020, Noranda communicated to Matec that it wanted to make additional changes to the Punch List. Matec responded that it would not accept any additions to the Punch List and that payment was already due on the same.

m.   On February 6, 2020, the parties' representatives met at the Louisiana plant to discuss the status of their respective performances under the Contract. Matec informed Noranda that its failure to maintain the Machines had made it

impossible to meet the performance guarantees in the Contracts, but that it still expected to be paid in full for its work.

n.  Throughout February 2020, Noranda communicated to Matec that it no longer wanted Matec to complete installation of the first cube filter press, but to instead focus on the other Machines. At this time, the cube filter press was nearly complete, and knowing it would be obligated to make payment when it was complete, Noranda instructed Matec to stop work so as to avoid its payment obligations under the Contracts.

o.  Throughout February and into March 2020, Noranda declined to make the software changes necessary to complete all the items on the Punch List, and at the same time, Noranda would not allow Matec remote access to the Machines so that Matec could make these software changes.

38.  Each of these actions, individually and collectively, caused substantial delay, cost Matec substantial time and money, and constituted a breach of Noranda's obligations under the Contracts, including its duty to perform in good faith.

39.  As a result of Noranda's actions, Matec was unable to fully complete its work under the Contracts despite its willingness and ability to do so.

40.  In addition to causing delays, Noranda remained delinquent on payments required under the Contracts through this period of time. Matec has repeatedly communicated this to Noranda and has continued to demand payment of the sums owed.

41.  Additionally, through this period of time, Matec never received any written notice or complaint from Noranda relating to any supposed failures of the Machines. In fact, Matec is informed and believes that Noranda is still using the Machines every day.

42.     Starting in late February 2020, Noranda prohibited Matec technicians—but not its own—from entering the Louisiana plant, ostensibly due to concerns over COVID-19.

**Events Immediately Precipitating This Litigation**

43.     On April 7, 2020, Matec gave Noranda formal notice that work was complete on the first two Magnum 2000 x 2000 200 machines.

44.     Additionally, the three other Machines Noranda ordered under the Contracts have been delivered to Noranda's facility in Louisiana.

45.     Notwithstanding its receipt of the Machines, and its own actions to interfere with and impede Matec's installation of the Machines, in an e-mail dated April 23, 2020, Noranda stated that it refused to make any payments on the amount owed under the Contracts.

46.     Again, notwithstanding its own actions to interfere with and impede Matec's installation of the Machines, in furtherance of Noranda's scheme to obtain the Machines for which it had agreed to pay over $2.6 million, on or around May 6, 2020, Noranda sent Matec a letter claiming that Matec was in material breach of the Contracts and that Noranda intended to finalize installation of the remaining Machines on its own.

47.     To the extent that Noranda is capable of finalizing installation on its own, this is only possible because of Martinelli's past and ongoing disclosure of Matec's confidential, proprietary, and trade secret information that he learned through his work at Matec Steelworks—conduct that Matec is informed and believes was facilitated, aided, and abetted by Noranda.

48.     Additionally, Matec is informed and believes that Noranda has been communicating with Matec's vendors, which supply parts for the Machines, using Matec's confidential information to obtain more favorable results in dealing with those vendors.

49.     That is, Noranda is enjoying the fruits of Matec's proprietary and trade secret information while openly flouting its obligations to Matec.

11

## COUNT I: BREACH OF CONTRACT
### Against Noranda

50.     Matec incorporates by reference the preceding paragraphs of this Complaint as if set forth fully herein.

51.     The 2017 Contract and the Installation Contract are valid, binding, and enforceable contracts.

52.     Matec has performed, or is willing and able to perform, all of its obligations under the Contracts. Nonetheless, Noranda has continually breached its obligations under the Contracts, including, but not limited to, through its actions outlined in Paragraphs 28 through 42 above.

53.     Noranda is delinquent on payments currently due and owing to Matec. In particular, Noranda has failed to pay the following invoices in full:

    a.   Invoice No. 143 for $685,294.00;

    b.   Invoice No. 147 for $684,294.00;

    c.   Invoice No. 164.1 for $984,525.00;

    d.   Invoice No. 44 for $42,000.00; and

    e.   Invoice No. 09 for $235,276.25.

Subtracting Noranda's partial payments of $637,912.46, Noranda currently owes Matec no less than $1,995,736.79.  In addition, Noranda's actions have caused Matec to incur further and additional expense.

54.     Due to Noranda's breaches, Matec has been damaged by an amount to be determined at trial, but which can be no less than $1,995,736.79.

## COUNT II: BREACH OF GOOD FAITH AND FAIR DEALING
### Against Noranda
### (In the Alternative to Count I)

55.    Matec incorporates by reference the preceding paragraphs of this Complaint as if set forth fully herein.

56.    The 2017 Contract and the Installation Contract are valid, binding, and enforceable contracts.

57.    Each of the Machines that Matec delivered or installed pursuant to the Contracts required maintenance work to keep the Machines functioning properly, and it was Noranda's responsibility to maintain the Machines once they were delivered or installed.

58.    Nonetheless, Noranda has failed to maintain the Machines, which has made it impossible for Matec comply with the performance guarantees in the Contracts. Noranda's conduct was intentional, willful, and specifically designed to prevent the successful completion of the Contracts.

59.    Additionally, Noranda has continually acted in bad faith through the course of Matec's performance under the Contracts. These additional acts of bad faith include, but are not limited to, Noranda's actions outlined in Paragraphs 28 through 42 above.

60.    Due to Noranda's bad faith conduct, Matec has been damaged in an amount to be determined at trial.

## COUNT III: TORTIOUS INTERFERENCE
### Against Noranda

61.    Matec incorporates by reference the preceding paragraphs of this Complaint as if set forth fully herein.

62.    Matec had a business relationship with Martinelli through which he acquired a duty to maintain the secrecy of Matec's confidential, proprietary, and trade secret information.

13

63.     This confidential, proprietary, and trade secret information includes, but is not limited to

    a.  Information, data, operating schemes, and documentation pertaining to Matec's software;

    b.  Drawings and other know-how used for machine assembly and installation; and

    c.  Vendors' preferences, prices, and the contractual conditions Matec applies to them so that Matec can maintain competitive prices on the market.

64.     Martinelli's duty to maintain the secrecy of Matec's confidential, proprietary, and trade secret information continued after he left Matec's employ.

65.     Noranda wrongfully, and knowingly, interfered with Matec's relationship with Martinelli by inducing him to disclose Matec's confidential, proprietary, and trade secret information, and by then using that information to its own advantage and to Matec's detriment.

66.     Matec is informed and believes that in its communications with vendors, Noranda is using Matec's confidential, proprietary, and trade secret information.

67.     Matec has suffered damage in an amount to be determined at trial as a result of Noranda's wrongful conduct.

## COUNT IV: TRADE SECRET MISAPPROPRIATION
### Against Noranda and Martinelli

68.     Matec incorporates by reference the preceding paragraphs of this Complaint as if set forth fully herein.

69.     In his role as a director at Matec Steelworks, and his employment at Matec Steelworks generally, Martinelli had access to Matec's economically valuable information, the secrecy of which Matec closely guards.

70.     This confidential, proprietary, and trade secret information includes, but is not limited to

      a.  Information, data, operating schemes, and documentation pertaining to Matec's software;

      b.  Drawings and other know-how used for machine assembly and installation; and

      c.  Vendors' preferences, prices, and the contractual conditions Matec applies to them so that Matec can maintain competitive prices on the market.

71.     Martinelli's duty to maintain the secrecy of Matec's confidential, proprietary, and trade secret information continued after he left Matec's employ.

72.     Matec is informed and believes that Noranda induced Martinelli to disclose Matec's confidential, proprietary, and trade secret information. Noranda did this knowing that Martinelli had a duty, under American and Italian law, to maintain the secrecy of Matec's confidential, proprietary, and trade secret information.

73.     Matec is informed and believes that in its communications with vendors, Noranda is using Matec's confidential, proprietary, and trade secret information.

74.     Matec has suffered damage in an amount to be determined at trial as a result of Noranda's and Martinelli's wrongful conduct.

## COUNT V: TORTIOUS INTERFERENCE
### Against Martinelli

75.     Matec incorporates by reference the preceding paragraphs of this Complaint as if set forth fully herein.

76.     Matec had a business relationship with Noranda as memorialized in the Contracts.

77.     Martinelli wrongfully, and knowingly, interfered with Matec's business relationship with Noranda by preventing Matec from fully performing under the Contracts, as outlined in Paragraphs 18 through 42 of this Complaint. .

78.     Matec has suffered damage in an amount to be determined at trial as a result of Noranda's wrongful conduct.

WHEREFORE, Matec respectfully requests that the Court award judgment in its favor and against Noranda and Martinelli, and that the Court award Matec damages in an amount to be proven at trial, but not less than $1,995,736.79 plus interest, as well as Matec's attorney fees and litigation costs, and any additional damages and such other relief as the Court deems appropriate.

Dated: May 29, 2020

<div style="margin-left: 40%;">

BRYAN CAVE LEIGHTON PAISNER LLP

By: /s/ Courtney J. Peterson____
Courtney J. Peterson
1290 Avenue of the Americas
New York, New York 10104
Phone: (212) 541-2000
Fax:    (212) 541-4630
courtney.peterson@bclplaw.com

Meryl Macklin (*pro hac vice* forthcoming)
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434
meryl.macklin@bclplaw.com

</div>

Logan Rutherford (*pro hac vice* forthcoming)
1200 Main Street, Suite 3800
Kansas City, Missouri 64105
logan.rutherford@bclplaw.com
*Attorneys for Plaintiffs*