```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Matec SLR, *et al.*,

                Plaintiffs,

     –v–

Gramercy Holdings I, LLC, *et al.*,

                Defendants.

20-cv-4136 (AJN)

MEMORANDUM OPINION &
ORDER

ALISON J. NATHAN, District Judge:

       This case concerns a dispute over the sale of industrial water filtration machines. Matec S.r.l. and its American affiliate sold three machines to Gramercy Holdings I, LLC, dba Noranda. The sale was under a contract that conditioned payment on Matec's maintenance of two machines it sold under an earlier contract. Matec alleges that Noranda deliberately frustrated its efforts to maintain the old machines to avoid having to pay for the new ones. It alleges that in furtherance of that effort Noranda hired an employee from Matec's supplier and stole its trade secrets. Noranda moves to dismiss. The Court concludes that Matec states a claim for breach of contract but that it fails to plausibly allege tortious interference or misappropriation. It thus grants Noranda's motion in part and denies it in part.

**I.     Background**

       For purposes of this motion, the Court takes as true all factual allegations in Matec's complaint, Dkt. No. 1, and draws all reasonable inferences in its favor. Because Matec asserts claims under its contracts with Noranda, the Court considers those documents too. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

Matec sold two filter press sludge filtration machines to Noranda in 2017 for use in Noranda's business manufacturing alumina. Compl. ¶¶ 1, 13. In July 2019, the two companies signed two additional contracts. *Id.* ¶¶ 14–16. The first of those contracts required Matec to perform a variety of maintenance activities (so-called punch list items) on the filter presses sold under the 2017 contract. *Id.* ¶ 15; *see* Punch List Agreement, Dkt. No. 16-2. The punch list agreement explained in several whereas clauses that its purpose was to resolve Noranda's claims that the original filter presses did not work as agreed. Under the second 2019 contract, Matec sold Noranda an additional filter press and two cube filter presses. Compl. ¶¶ 16–17; *see* Manufacture Agreement, Dkt. Nos. 16-3, 16-4. The manufacture agreement expressly conditioned payment for the new filter presses on Matec's performance under the punch list agreement. Manufacture Agreement, Ex. D, ¶ 2.

Matec alleges that Noranda took a number of steps to thwart its performance under the punch list agreement. Compl. ¶ 28. Those steps included:

- Repeatedly changing its standards for Matec's work on the filter presses. *Id.* ¶¶ 30–31, 37.
- Impeding Matec's access to Noranda's plant where the filter presses were located. *Id.* ¶¶ 31, 37.
- Failing to adequately clean and maintain the filter presses in accordance with Matec's guidance and using improper third-party parts. *Id.* ¶¶ 32–37.
- Refusing to accept parts for the filter presses that it had accepted during the bidding process. *Id.* ¶ 37.

Despite these obstacles, Matec notified Noranda on April 7, 2020, that its work on the first two filter presses was complete. *Id.* ¶ 43. Noranda responded that it would make no further payments. *Id.* ¶ 45. Noranda continues to use the machines. *Id.* ¶ 41.

Matec also alleges that Luca Martinelli, a former director of its supplier Matec Steelworks S.r.l., went to work for "Noranda or a Noranda-affiliated entity" in September 2019.

*Id.* ¶¶ 9, 24. Martinelli participated in Matec's negotiations with Noranda and managed various stages of the installation and assembly of the filter presses at Noranda's plant. *Id.* ¶ 19. Matec alleges that Martinelli had access to "technical information regarding the design, manufacture, and installation of the Machines and their maintenance and operation, the secrecy of which Matec closely guards and which Matec considers to constitute trade secrets." *Id.* ¶ 20. Matec alleges that Martinelli's disclosure of information he learned while working at Matec Steelworks has allowed Noranda to finalize installation of the filter presses on its own and to obtain more favorable deals from Matec's vendors. *Id.* ¶¶ 46, 48.

Noranda sued Matec on May 21, 2020, alleging that Matec had failed to deliver filter presses that lived up to its representations or complete its obligations under the punch list agreement. *See Gramercy Holdings I, LLC v. Matec S.R.L.*, No. 20-cv-3937 (AJN). Matec filed this suit eight days later. Matec asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference, and trade secret misappropriation. Noranda moves to dismiss.

**II.      Legal Standard**

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether a complaint states a claim, a court accepts as true all allegations in the complaint and draws all reasonable inferences in favor of the non-moving party. *Id.* In

addition to the complaint and any exhibits, the Court may also consider documents that are "integral" to the complaint, including contracts that form the basis for a plaintiff's claim. *Chambers*, 282 F.3d at 153.

### III. Discussion

#### A. Breach of Contract

Under New York law, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent. The best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). The Court thus begins with the plain meaning of the contract's terms. "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous. *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).

Matec's breach of contract claim is straightforward: it alleges that Noranda has not paid for its filtration machines under the manufacture agreement. Compl. ¶ 53. In the alternative, it claims that Noranda's frustration of its performance under the punch list agreement breached its implied obligation of good faith and fair dealing. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotation marks omitted). Noranda does not dispute that Matec plausibly alleges that it failed to make its payments. Instead, it contends that Matec did not fulfill its obligations under the punch list agreement, and so failed to satisfy a condition precedent of Noranda's performance.

Under New York law, "a condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" *MHR Cap. Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995)). "Express conditions must be literally performed; substantial performance will not suffice." *Id.*

Express conditions can produce extraordinarily harsh results, and so New York courts have adopted several doctrines to reduce the risk of forfeiture. First, "courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition." *Oppenheimer*, 660 N.E.2d at 418. Second, New York courts have held that "a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition." *Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of City of New York*, 268 N.E.2d 782, 784 (N.Y. 1971).

The parties agree that the manufacture agreement contains a condition precedent: Exhibit D, ¶ 2 expressly conditions Noranda's payment obligations on Matec's "completion of repairs of the existing two Matec presses" consistent with the punch list agreement. And Matec concedes, at this juncture, that it did not complete those repairs. Opp. Br., Dkt. No. 21, at 6. The question here is whether Matec has plausibly alleged that Noranda frustrated its performance under the contract. The Court concludes that it has.

Matec alleges that Noranda refused its technicians access to the filter presses and engaged in other conduct that prevented it from making repairs. *See* Compl. ¶¶ 30–38. These allegations are specific. For example, it alleges that Noranda told Matec technicians to leave its plant on September 14, 2019, and not to return to the worksite. *Id.* ¶ 37. It alleges that Noranda

refused delivery of parts without justification on July 9, 2019 and September 19, 2019. *Id.* It alleges specific dates on which Matec technicians observed Noranda improperly maintaining the machines, including by failing to clean them, using third-party parts, and failing to replace components as directed in Matec's operating manuals. *Id.* ¶¶ 34, 37. Matec further alleges that Noranda's directives to stop work on specific machines allowed it to manipulate payment deadlines. *Id.* ¶ 37. Accepting these allegations as true and drawing all reasonable inferences in Matec's favor, these allegations are more than enough to support a plausible inference that Noranda frustrated Matec's performance under the punch list agreement.

Apart from disputing the factual bases of these claims (which the Court may not consider on a motion to dismiss), Noranda offers two arguments as to why the Court should nonetheless enforce the express condition in the manufacture agreement. Neither has merit.

First, Noranda contends that the contracts permitted the actions Matec alleges frustrated its performance, and so accepting Matec's arguments would essentially rewrite the parties' agreement. However, Noranda does not identify any specific provisions of the contracts that allow arbitrarily excluding Matec's workers from its plant or operating the filter presses in a manner that would render Matec's repairs impossible. In light of the "especially strong" preference against forfeitures under New York law, the Court does not read a general provision allowing Noranda to inspect and approve Matec's work to enable it to deliberately stifle Matec's performance. *Oppenheimer*, 660 N.E.2d at 418.

Second, Noranda contends that Matec failed to allege compliance with a provision of the manufacture agreement governing delays in performance. Section XIV of the manufacture agreement allowed Matec additional time to meet performance milestones, but only if it submitted a request for a change order within ten days of any delay. The provision expressly

6

speaks to "delay to [Matec] resulting from interference by [Noranda] . . . or resulting from delay or failure of [Noranda] in making [Matec's] work area available." Thus, because Matec did not avail itself of this procedure, Noranda contends that Matec did not satisfy the express conditions requiring it to make payment.

Unlike Exhibit D, however, § XIV of the manufacture agreement lacks the sort of "unmistakable language of condition" necessary to create an express condition under New York law. *MHR*, 912 N.E.2d at 47. New York law thus requires the Court to read § XIV as a promise, not a condition. *Oppenheimer*, 660 N.E.2d at 418. If Matec failed to comply with that provision, it may be vulnerable to claims for breach of contract for any delays. But violation of a promise, rather than an express condition, does not necessarily relieve other parties of their performance obligations. *Id.* at 419.

The Court thus concludes that Matec has plausibly alleged a breach of contract.

### B. Trade Secret Misappropriation

Matec's remaining claims stand on shakier ground. Because both relate to Martinelli's alleged disclosure of trade secrets to Noranda, the Court begins with Matec's claim for trade secret misappropriation.

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999)). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over

competitors who do not know or use it." *Id.* New York courts consider a number of factors to determine whether information qualifies as a trade secret, including the extent to which the information is known by others outside the business and the measures taken to keep it secret. *Id.* (citing *Ashland Mgmt., Inc. v. Janien*, 624 N.E.2d 1007, 1013 (N.Y. 1993)). A growing consensus holds that plaintiffs must identify trade secrets with particularity. *See Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 258–59 (S.D.N.Y. 2014) (collecting cases), *aff'd*, 610 F. App'x 69 (2d Cir. 2015).

Matec's trade secret misappropriation claim stems from Noranda's hiring of Martinelli in September 2019. Matec alleges that, in his role as a director at Matec Steelworks, Martinelli had access to information including documentation of Matec's software, drawings related to machine assembly, and vendor pricing information. Compl. ¶¶ 69–70. Matec alleges on information belief that Martinelli disclosed that information to Noranda when he began his employment there. *Id.* ¶ 72.

The elephant in the room is that Martinelli did not work for Matec; he worked for a separate company, Matec Steelworks. *Id.* ¶¶ 18, 69. Matec alleges that Matec Steelworks was "Matec's supplier," but it does not allege any formal corporate relationship between the two companies. *Id.* ¶ 18. Nor does Matec allege that it had any contractual relationship with Martinelli. Under New York law, information disclosed to third parties in the absence of a nondisclosure agreement is not confidential. *See Hyperlync Techs., Inc. v. Verizon Sourcing LLC*, 125 N.Y.S.3d 96, 97 (App. Div. 2020). Matec's failure to allege the existence of a nondisclosure agreement is thus fatal to its claim.

Matec also fails to allege facts supporting a plausible inference that its information was secret or that Noranda obtained it improperly. Based on its own allegations, it shared that

information with its third-party supplier. It does not allege any specific measures that it took to maintain its confidentiality. That Matec considers the information to be valuable does not, by itself, make it a trade secret. *See Ashland*, 624 N.E.2d at 1013. Moreover, trade secret protection does not extend to the "general knowledge and experience" of a departing employee. *Advance Biofactures Corp. v. Greenberg*, 478 N.Y.S.2d 344, 346 (App. Div. 1984). Matec offers nothing more than the fact that Martinelli went to work for Noranda as the basis for its belief that he disclosed proprietary information. *See* Compl. ¶¶ 47, 69–73.

Taking its allegations as true and drawing all reasonable inferences in its favor, Matec has not plausibly alleged trade secret misappropriation.

### C. Tortious Interference

The Court finally turns to Matec's claim for tortious interference. Matec alleges, essentially, that Noranda interfered with Matec's relationship with Martinelli by inducing him to reveal proprietary information. Compl. ¶¶ 61–67.

New York courts have held that "inducing breach of a binding agreement and interfering with a nonbinding economic relation can both be torts, but that the elements of the two torts are not the same." *Carvel Corp. v. Noonan* (*Carvel II*), 818 N.E.2d 1100, 1103 (N.Y. 2004) (internal quotation marks omitted). Enforceable, contractual rights receive a greater degree of protection. "Thus, where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior. Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the

9

defendant." *Id.* (quoting *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 664 N.E.2d 492, 496 (N.Y. 1996)).

The more demanding standard for interference with prospective relations applies, because Matec does not allege any contractual relationship with Martinelli. (Matec concedes this standard applies. *See* Opp. Br. at 16.) To the contrary, it alleges that he was employed by a separate company, Matec Steelworks. Compl. ¶ 18. To prevail on a claim for tortious interference with prospective relations, "a plaintiff in New York must prove that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan* (*Carvel I*), 350 F.3d 6, 17 (2d Cir. 2003). The tort of interference with prospective economic relations does not bar legitimate competition. "As a general rule, the defendant's conduct must amount to a crime or an independent tort." *Carvel II*, 818 N.E.2d at 1103.

Matec fails to allege that Noranda used criminal or tortious means to interfere with its relationship with Martinelli. To the contrary, Matec does not allege *any* facts related to how Martinelli came to be hired by Noranda. Nor does Matec allege what precisely its business relationship with Martinelli was. Instead, its claims for tortious interference appear to rest on its allegations that, after Martinelli had already left Matec Steelworks, Noranda induced him to reveal Matec's trade secrets. As discussed above, Matec does not plausibly allege trade secret misappropriation. Absent a plausible allegation of independently tortious or criminal conduct, Matec cannot state a claim for interference with prospective economic relations.

## Conclusion

For the foregoing reasons, the Court GRANTS Noranda's motion to dismiss (Dkt. No. 14) as to Matec's claims for trade secret misappropriation and tortious interference and DENIES it as to Matec's claims for breach of contract. The Court will set a status conference by separate order.

This resolves Docket Number 14.

SO ORDERED.

Dated: March 31, 2021
New York, New York

_____
ALISON J. NATHAN
United States District Judge